UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHERYL L. MARSALA,<br><br>                    Petitioner,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social Security<br>Administration,<br><br>                    Respondent. | Case No. 1:11-cv-00122-EJL-CWD<br><br>**REPORT AND<br>RECOMMENDATION** |

**INTRODUCTION**

Cheryl Marsala ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for social security disability insurance benefits and supplemental security income disability benefits under Titles II and XVI of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will recommend that the case be remanded to the Social Security Administration for further proceedings consistent with this Report and Recommendation.

**REPORT AND RECOMMENDATION - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 2, 2007. (AR 186-93.) Petitioner claimed she had been disabled and unable to work since March 31, 2006, due to nerve damage, arthritis and spurs in her back and hips, varicose vein problems, depression, and back problems. (AR 254.) Her application was denied initially and on reconsideration, and a hearing was held on July 1, 2009, before Administrative Law Judge ("ALJ") Michael A. Kilroy.[1]  The ALJ issued a decision finding Petitioner not disabled on November 24, 2009, and Petitioner timely requested review by the Appeals Council.  The Appeals Council denied Petitioner's request for review on January 28, 2011, and the ALJ's decision became the final decision of the Commissioner.  Petitioner timely filed an appeal of the Commissioner's final decision to this Court on March 24, 2011. (Dkt. 1.)  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the July 1, 2009 hearing, Petitioner was represented by counsel and testified on her own behalf.  The ALJ also heard testimony from vocational expert Anne Aastum. Born in 1954, Petitioner was 53 years of age on her alleged disability onset date and 55 years of age at the time of the ALJ's decision. (AR 186.) Concerning her education, Petitioner earned a General Equivalency Degree and completed vocational training as an automation secretary. (AR 258-59.) Although there is some dispute over whether one of

---

[1] The hearing was conducted via video conference with Petitioner appearing in Boise, Idaho, and ALJ Kilroy presiding in Billings, Montana.

Petitioner's previous jobs constituted unskilled or semi-skilled work, Petitioner reported that she worked in the past as a draw manager for the Idaho Lottery, a cashier at a hardware store, an assistant manager at a grocery store, and as a data entry clerk.[2] (AR 229.)

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. (AR 19.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner had the following severe impairments: "history of coronary artery disease and acute myocardial infarction with placement of stents x2; diabetes mellitus, type II; obesity; unspecified ployarthropathy or polyarthritis, site unspecified, chronic; degenerative disc disease of the lumbar spine; degenerative joint disease of the hips bilaterally; [and] major depressive disorder, not otherwise specified." (AR 19.)

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments did not meet or equal the

---

[2] Petitioner also reported previous work experience as a caregiver, receptionist, and cashier at a truck stop and at a gas station. (AR 229.) Those positions, however, all lasted for a short period of time, and do not meet the regulatory criteria to be deemed past relevant work.

**REPORT AND RECOMMENDATION - 3**

criteria for the listed impairments, specifically considering Petitioner's history of coronary artery disease and acute myocardial infarction under Listing 4.04 (*Ischemic heart disease*), Petitioner's diabetes under Listing 9.08 (*Diabetes mellitus*), Petitioner's degenerative disc disease under Listing 1.04 (*Disorders of the spine*), Petitioner's bilateral degenerative joint disease under Listing 1.02 (*Major dysfunction of a joint(s)*), and Petitioner's unspecified polyarthropathy or polyarthritis under Listing 1.00 (dealing with musculoskeletal impairments) and Listing 11.00 (dealing with neurological disorders). The ALJ also considered Petitioner's obesity, which has been deleted from the Listing of Impairments, and evaluated whether the combined effects of Petitioner's obesity – in connection with her other impairments – met the requirements of a specified listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ determined Petitioner had the RFC to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b), with several qualifications. (AR 23-24.) The ALJ's RFC assessment lies at the heart of Petitioner's challenge in this case, and the particulars of the RFC assessment will be addressed in detail below.

In light of the RFC assessment, the ALJ found that Petitioner was not able to perform any past relevant work. (AR 27-28.)  If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step

five that the claimant retains the capacity to make an adjustment to other work that exists

in significant levels in the national economy, after considering the claimant's RFC, age,

education and work experience.  Relying upon the vocational expert's testimony

concerning Petitioner's work as cashier at the hardware store from August of 1996 and

July of 1999, the ALJ found that Petitioner's work duties were those of a salesperson, and

that Petitioner had acquired transferable skills while working at the hardware store,

including dealing tactfully and courteously with people, keeping records of sales and of

customers contacted, and completing sales forms. (AR 28.) Based on that finding, the

ALJ concluded that Petitioner could perform work existing in significant numbers in the

national economy, specifically noting the positions identified by the vocational expert:

order clerk, clerical sorter, and information clerk. (AR 29.)  Because the ALJ found that

Petitioner could perform work existing in significant numbers in the national economy, he

concluded that Petitioner was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).

An individual will be determined to be disabled only if her physical or mental

impairments are of such severity that she not only cannot do her previous work but is

unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its]

**REPORT AND RECOMMENDATION - 6**

judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner challenges the ALJ's decision on three grounds.  First, Petitioner argues that the ALJ's RFC determination is not supported by substantial evidence. Second, Petitioner argues that the ALJ erred in his evaluation of the medical opinion evidence. Finally, Petitioner argues that the ALJ's determination that Petitioner acquired transferrable skills is not supported by the evidence in the record and that the ALJ's conclusion at step five – finding that there were jobs existing in significant numbers in the national economy which Petitioner could perform – is therefore not supported by substantial evidence. Based upon these assignments of error, Petitioner argues that the ALJ's decision should be reversed and the Court should order the immediate payment of benefits.

## 1.      Residual Functional Capacity

When a claimant's impairments are not sufficiently severe to equal or exceed a listed impairment, the ALJ is required to assess the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most she can do despite her limitations, and the purpose of the assessment is to determine whether the claimant is capable of performing past relevant work or other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1545. According to the Administration, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a

week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8.[3] "The RFC

assessment must be based on *all* of the relevant evidence in the case record," including,

reports of daily activities, lay evidence, medical source statements, and a claimant's

testimony concerning the effects of symptoms. SSR 96-8 (emphasis in original).

      Here, the ALJ assessed Petitioner's RFC as follows:

> [T]he claimant has the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> and assumes the claimant is able to work for an 8-hour day
> except she is able to lift up to 15 pounds on an occasional
> basis and up to 10 pounds on a frequent basis, walk 30
> minutes at a time, stand 15 to 30 minutes at a time, sit 15 to
> 60 minutes at a time, and must be allowed to periodically
> alternate between these activities for an 8-hour period of time.
> It is this ability to alternate that provides the basis for the
> undersigned assuming the claimant is able to make it through
> an 8-hour period of time. The claimant is occasionally able to
> climb ramps and/or stairs, occasionally balance and stoop,
> never kneel or crawl, is limited to frequent, but not repetitive,
> use of the upper extremities in terms of both gross and fine
> manipulation, must avoid concentrated exposure to cold,
> excessive vibration, and to uneven and/or rough surfaces, and
> due to her cardiac difficulties and mental impairments, is
> limited to work with no high constant focus or high stress
> requirements.

(AR 23-24.) According to the ALJ, "the above residual functional capacity assessment is

supported primarily by a combination of the claimant's own admissions regarding her

_____

[3] Social Security Rulings do not have the force of law but must be given some
deference as long as they are consistent with the Social Security Act and regulations.
*Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).

**REPORT AND RECOMMENDATION - 8**

physical abilities in conjunction with the medical opinion provided by [the claimant's treating physician] Dr. Swartz." (AR 27.)

Petitioner argues that neither her reported activities nor Dr. Swartz' medical opinion support the ALJ's RFC assessment. For the reasons summarized below, the Court agrees.

### A.     Petitioner's Reported Activities

The federal regulations mandate a claimant's RFC to be determined "based on all of the relevant medical and other evidence," which includes "descriptions and observations of [a claimant's] limitations . . . provided by [the claimant]." 20 C.F.R. § 404.1545(a)(3).

In her application for social security benefits, Petitioner reported that her ability to work was limited due to chronic back, hip, and leg pain, that she experiences shortness of breath from her cardiac condition, and that she suffers from general anxiety and depression about her medical condition. Concerning her personal care, Petitioner reported that she has to sit or hang onto something to dress, she cannot reach her feet while bathing, numbness occurs if she stands for too long, she has difficulty using the toilet due to her condition, and "all daily living chores need to be done with really frequent changes of positions, i.e., standing and sitting." (AR 221.) Concerning house and yard work, Petitioner reported that she is able to do dishes, laundry, dust, vacuum, and water the grass subject to the qualification that she needs frequent breaks to do these activities. (AR 222.) She reported that she is unable to do lawn work because she becomes too tired and

**REPORT AND RECOMMENDATION - 9**

pain occurs. (AR 223.) Concerning shopping, Petitioner reported that she shops approximately every two weeks for no more than 35 or 40 minutes. (*Id.*)

Concerning her physical abilities, Petitioner reported that she can lift about 10 pounds, walk for about 30 minutes before she experiences pain and numbness, sit for 10 minutes before she needs to move, and can only complete tasks with regular rest periods. (AR 225.) She reported that she can walk about two city blocks, or for about 30 minutes, before needing to stop and rest. (*Id.*) She also reported that, after walking for 30 minutes, she requires half an hour to an hour to recuperate. (*Id.*) Although she reported that she lived alone, Petitioner also reported that her "[s]ister assists with almost everything because it hurts to move and she has little motivation." (AR 276.)

Petitioner's testimony during the hearing was consistent with her reported limitations. She testified that she can sit for about 15-20 minutes, stand for about 15 minutes, and walk for 20-30 minutes "if [she] ha[s] something to hold onto like a cart for shopping." (AR 55-5.) She testified that she has constant pain in her back radiating down her right leg, (AR 48), that she takes Lyrica and Celebrix for pain, (AR 48), and that she cannot do any strenuous activities such as operating a vacuum for more than 10 minutes. (AR 49.) On a scale from one to ten, Petitioner testified that her pain level was an eight out of ten without medication, (AR 49), and three or four with medication. (AR 50.) Petitioner testified that, following her heart attack, she experiences shortness of breath and is required to take daily naps. (AR 51.) She also testified that she naps or reclines 5 hours each day. (AR 57.)

**REPORT AND RECOMMENDATION - 10**

The ALJ found that Petitioner's description of her abilities supported the conclusion that she is capable of performing light work as defined in 20 C.F.R. § 404.1567(b),[4] subject to several additional limitations. In reaching this conclusion, the ALJ "assumed" that Petitioner is capable of working an 8-hour day so long as she is allowed to alternate between sitting and standing. (AR 23.)

Petitioner's description of her limitations and activities do not support the ALJ's conclusion that she is capable of working an 8-hour day. While Petitioner reported that she could sit for 15-20 minutes at a time, stand for 15 minutes, and walk for 20-30 minutes, the ALJ's RFC assessment did not take into consideration the qualifications Petitioner placed on these abilities, such as taking frequent breaks during routine tasks, needing to hold onto something while walking, the need to lie down during the day, or needing between a half hour to an hour to recuperate after walking for 30 minutes.

The Commissioner takes the position that this is a matter of credibility – that the ALJ rejected Petitioner's testimony concerning the severity of her impairments – and that the adverse credibility determination was supported by clear and convincing reasons. The Commissioner is correct that the ALJ recited the boiler plate language rejecting

---

[4] 20 C.F.R. § 404.1567 provides the following definition of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

**REPORT AND RECOMMENDATION - 11**

Petitioner's testimony concerning the severity of her limitations to the extent her testimony conflicted with the ALJ's RFC assessment. That boiler plate language reads as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 25.)

It is well-settled that the ALJ is responsible for determining credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

**REPORT AND RECOMMENDATION - 12**

Here, the Commissioner argues that the ALJ found Petitioner not credible for three reasons. The first two relate to Petitioner's alleged onset of disability date. The ALJ noted that Petitioner's alleged onset date of March 31, 2006, corresponded with the day she was laid off from her job as a data entry clerk. (AR 25.) The ALJ also noted that, in her application, Petitioner alleged that her impairments first interfered with her ability to work in May of 2007. (AR 25.) The Court agrees that these discrepancies were a proper basis for the ALJ to question whether Petitioner was disabled beginning from her alleged onset date. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). They are not, however, related to Petitioner's abilities or limitations. In this regard, the Commissioner argues that the ALJ found that Petitioner's daily activities were inconsistent with the degree of limitation Petitioner alleged.

It is somewhat unclear whether the ALJ did in fact rely upon Petitioner's daily activities to reject her alleged limitations. After summarizing Petitioner's hearing testimony, the ALJ stated that,

> She has, however, lived alone since March of 2006. She testified that she does not have a problem doing her own cooking and preparing her own meals such as fried chicken strips, chicken breast and pasta, and that a typical meal, which she make [sic] usually twice per day, will take her about 30 minutes to prepare. She further testified that she is able to do the necessary cleaning of her living area and that she goes grocery shopping about once every 2 weeks and is able to finish her shopping in a timeframe of 30 to 60 minutes.

(AR 24.) The ALJ does not explain how Petitioner's description of her daily activities is inconsistent with her alleged limitations. Moreover, Petitioner's description of her daily

**REPORT AND RECOMMENDATION - 13**

activities, as described above, would not be a proper basis for an adverse credibility

determination: "evidence that [the claimant] could assist with some household chores [i]s

not determinative of disability." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)

("Disability does not mean that a claimant must vegetate in a dark room excluded from all

forms of human and social activity.") (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d

Cir. 1981).

      The Commissioner would have the Court extrapolate from the ALJ's decision that

the ALJ credited some of Petitioner's reported limitations – such as being able to sit for

15-20 minutes and walk for 20-30 minutes – while discrediting others – such as

Petitioner's reported need to take frequent breaks, hold onto something while she walks,

and nap or recline for 5 hours each day. Such extrapolation is impermissible. If the ALJ

was crediting some of Petitioner's testimony while rejecting other parts of it, he was

required to say so and to justify the rejection of Petitioner's testimony with clear and

convincing reasons. *See Reddick*, 157 F.3d at 722 (holding that general findings are

insufficient; the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints).

## B.    Dr. Swartz' Medical Opinion

      The ALJ stated in his decision that Petitioner's RFC assessment was supported by

the medical opinion of Dr. Rachel Swartz – one of Petitioner's treating physicians. (AR

27.) Petitioner argues that Dr. Swartz' opinion does not support the ALJ's RFC

assessment. The Court agrees.

**REPORT AND RECOMMENDATION - 14**

Dr. Swartz treated Petitioner for over a year and completed a Residual Functional Capacity Questionnaire dated April 30, 2009. (AR 460-61.) In the questionnaire, Dr. Swartz opined that Petitioner could sit for up to six hours of an eight hour workday and stand/walk for 1 hour of an eight hour workday. (AR 460.) Dr. Swartz opined that Petitioner would need to take unscheduled breaks, need to alternate between sitting and standing at will, and would miss work "three or four times a month." (Ar 460-61.)

The ALJ stated in his decision that he was giving the greatest weight to Dr. Swartz' opinion. Dr. Swartz' opinion, however, is not compatible with light work, which requires approximately 6 hours of standing or walking in an 8-hour workday. *See* SSR 83-10. As noted above, Dr. Swartz opined that Petitioner could "stand/walk" for no more than 1 hour. (AR 460.) The Commissioner argues that "it is perfectly rational to read Dr. Swartz's opinion as a limitation to 1 hour of walking and one hour of standing in an 8-hour workday [and] [b]ecause Dr. Schwartz's [sic] opinion can rationally be read as either limiting Petitioner to 1 total hour of walking and standing or 1 hour each of walking and standing, the ALJ's conclusion must be upheld." (Dkt. 16 at 10.) While creative, this argument fails for two reasons. First, the ALJ did not state in his decision that he was interpreting Dr. Swartz' opinion in this way. *See Barbato v. Comm'r of Social Sec. Admin.*, 923 F.Supp. 1273, 1276 (C.D. Cal. 1996). Second, the ALJ addressed the same statement from another of Petitioner's treating physicians and interpreted the statement as "stand and/or walk for a maximum of 30 minutes at a time and for no more than a total of 1 hour in an 8-hour workday." (AR 26.) Moreover, the plain reading of "stand/walk for 1

**REPORT AND RECOMMENDATION - 15**

hour" is that the claimant can stand and/or walk for a maximum of 1 hour – not walk for 1 hour and stand for 1 hour.

Petitioner also points out that the ALJ failed to accurately describe Dr. Swartz' opinion. Specifically, the ALJ stated that, according to Dr. Swartz' opinion, Petitioner would "likely miss work only 3 or fewer times a month." (AR 27.) This statement does not accurately reflect Dr. Swartz' opinion, which actually states that Petitioner would miss work "[t]hree or four times a month." (AR 461.) The difference is significant. According to the vocational expert, if Petitioner were to miss more than three days of work per month, she would be precluded from all work. (*See* AR 88-89.)

Based upon the above discussion, the Court finds that the ALJ's RFC assessment is not supported by Petitioner's admissions concerning her abilities or Dr. Swartz' opinion. The Court will recommend that the case be remanded on this issue for the Commissioner to conduct an evaluation of Petitioner's RFC that takes into consideration – and is consistent with – all the relevant evidence in the record as required by 20 C.F.R. § 404.1545.

## 2.      Evaluation of the Medical Opinions

 Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is accorded to the opinion of a treating source than to

**REPORT AND RECOMMENDATION - 16**

non-treating physicians.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  If the

treating physician's opinion is not contradicted by another doctor, it may be rejected only

for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

Cir.1991).  If the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject the treating physician's opinion without providing "specific

and legitimate reasons" supported by substantial evidence in the record for so doing.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).  In turn, an examining physician's

opinion is entitled to greater weight than the opinion of a non-examining physician.

*Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450

(9th Cir.1984).

        An ALJ is not required to accept an opinion of a treating physician if it is

conclusory and not supported by clinical findings.  *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's

opinion of a petitioner's physical condition on the ultimate issue of disability.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does

not support the physician's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r*

*of Social Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may

not support the physician's opinion include clinical findings from examinations,

conflicting medical opinions, conflicting physician's treatment notes, and the claimant's

daily activities.  *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v.*

*Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Social Sec. Admin*., 169

**REPORT AND RECOMMENDATION - 17**

F.3d 595 (9th Cir. 1999).

The ALJ's decision addresses the opinions of two of Petitioner's treating physicians – Dr. Savita Hedge and Dr. Rachel Swartz. Petitioner argues that the ALJ improperly rejected Dr. Hedge's opinion in favor of Dr. Swartz' opinion and, notwithstanding the fact that the ALJ said he was giving greater weight to the opinion of Dr. Swartz, Petitioner argues that the ALJ actually rejected Dr. Swartz' opinion. This second assertion stems from the fact that the ALJ's decision does not accurately reflect Dr. Swartz' opinion, which is discussed above. Because the Court has already determined that this case should be remanded for the Commissioner to reevaluate Petitioner's RFC consistent with Dr. Swartz' opinion, Petitioner's argument that the ALJ rejected Dr. Swartz' opinion will not be addressed again here.

Turning to Petitioner's argument that the ALJ improperly gave greater weight to the opinion of Dr. Swartz over Dr. Hedge, the Court finds no error. The ALJ rejected Dr. Hedge's opinion in favor of Dr. Swartz because Dr. Swartz treated Petitioner for a longer period of time. (AR 27.) Such a determination is permissible under both the federal regulations and the case law. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships.")

**REPORT AND RECOMMENDATION - 18**

**3.      Transferability of Skills**

At step four of the sequential evaluation, the ALJ found that Petitioner was unable to perform any past relevant work. (AR 27.) Once a claimant establishes the inability to perform prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560. The Commissioner can meet this burden in one of two ways: (1) through the testimony of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines (known as the "Grids"). *See Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

In this case, the ALJ relied upon the testimony of vocational expert Anne Aastum ("VE Aastum"). Prior to the hearing, VE Aastum prepared a Past Relevant Work Summary for the Petitioner in which she lists a number of skills that Petitioner would have acquired through her past relevant work. (AR 293.) In the summary, VE Aastum characterized Petitioner's work at the hardware store between August of 1996 and July of 1999 as the semi-skilled position of "Salesperson, General" under DOT Code 279.357-050. VE Aastum opined that, in this job, Petitioner acquired the following skills: "Dealing tactfully and courteously with people; keeping records of sales and customer[s] contacted; completing sales forms." (AR 293.) Based on VE Aastum's opinion, the ALJ concluded in his decision that Petitioner had acquired work skills from past relevant work. The ALJ then concluded that "*the claimant has acquired work skills from past relevant work that*

**REPORT AND RECOMMENDATION - 19**

*are transferable to other occupations* with jobs existing in significant numbers in the national economy." (AR 28) (emphasis added).

Petitioner argues that the vocational expert's characterization of Petitioner's duties at the hardware store as a salesperson was inaccurate. Specifically, Petitioner argues that her job duties at the hardware store were that of a cashier, which is an unskilled position, and the Social Security Administration has made clear that unskilled work cannot result in transferable skills. *See* SSR 82-41. Based on this assertion, Petitioner argues that the ALJ's conclusion at step five of the sequential evaluation was not supported by substantial evidence.

An ALJ can find a claimant's acquired skills are transferable to other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). The federal regulations make clear that this determination "depends largely on the similarity of occupationally significant work activities among different jobs." *Id*. "Transferability is most probable and meaningful among jobs in which (i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." *Id*. § 404.1568(d)(2).

In determining whether a claimant's past relevant work was semi-skilled and whether the claimant acquired transferable skills from that work, the Commissioner has cautioned ALJs to pay "close attention . . . to the actual complexities of the job in dealing

**REPORT AND RECOMMENDATION - 20**

with data, people, or objects and to the judgments required to do the work," because

"[e]ven though semiskilled occupations require more than 30 days to learn, the content of

work activities in some semiskilled jobs may be little more than unskilled." SSR 82-41.

Indeed, jobs at the lower end of the semi-skilled work spectrum may not produce any

transferable skills, and even jobs at the higher level of semi-skilled work may involve

many tasks that "do not provide a special advantage over unskilled workers." *Id.*

      An ALJ's determination at step five of the sequential evaluation -- as with all the

steps -- must be supported by substantial evidence. And when an ALJ makes a finding

that a claimant has transferable skills, he must identify the specific skills actually acquired

by the claimant and the specific occupations to which those skills are transferable. SSR

82-41; *see also*, *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1998).

      The Court agrees with Petitioner that the ALJ's finding that she acquired

transferable skills while working at the hardware store is not supported by substantial

evidence. As a preliminary matter, "dealing tactfully and courteously with people" are not

transferable skills under the circumstances present in this case. The regulations make

clear that "dealing with people" is a transferable skill when it is done "at a high level of

complexity." *See* 20 C.F.R. § 404.1568(c). Similarly, the Ninth Circuit has addressed the

differences between vocational "skills" and general "aptitudes," *see Renner v. Heckler*,

786 F.2d 1421, 1424 (9th Cir. 1986), and it is clear in this case that any 'people skills' that

Petitioner acquired were not "transferable skills" within the meaning of the federal

regulations.

**REPORT AND RECOMMENDATION - 21**

More important for the purposes of this case is the fact that neither VE Aastum nor the ALJ described how the particular transferable skills acquired at the hardware store were transferable to the jobs that the ALJ found were available to Petitioner in the national economy. The absence of this analysis is fatal to the ALJ's determination that Petitioner acquired transferable skills and requires a finding that the ALJ's conclusion on this issue is not supported by substantial evidence.[5] As Petitioner points out, the *Dictionary of Occupational Titles* ("DOT") sets forth a detailed description of the duties for "Salesperson, General Hardware." The DOT provides that a person in this position "[s]ells hardware . . . [and] [a]dvises customer on tools, hardware, and materials needed, and procedure to follow to complete task customer wishes to perform." There is no discussion in the ALJ's decision whether Petitioner actually performed any of the above functions or, if she did, how those functions would transfer to the jobs the ALJ found available in the national economy that Petitioner could perform.

**4.   Remedy**

Petitioner asserts that the Court should remand this case and order an immediate payment of benefits. A district court may remand a social security case with an order for immediate payment of benefits where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be

---

[5] The Court expresses no opinion as to whether Petitioner did in fact acquire transferable skills during her work at the hardware store -- only that the ALJ's conclusion that she did is not supported by substantial evidence. On remand, this issue may be addressed in greater detail and in accordance with SSR 82-41.

**REPORT AND RECOMMENDATION - 22**

resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

The Ninth Circuit recently elaborated on when an order for immediate payment of benefits is appropriate, stating: "When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, __ F.3d __, 2012 WL 3185576 *8 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). The Court of Appeals also stated that the court "may exercise [its] discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" *Id.* (quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it I snot clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Id.*

The Court finds that this case does not present the extraordinary circumstances required for remand with an immediate payment of benefits. The second requirement identified by the Ninth Circuit has not been met. There are outstanding issues that must be resolved before a determination of disability can be made and the case would benefit from further development of the record. The Court has found that the ALJ's RFC assessment was not supported by substantial evidence and that this issue should be revisited on

remand. Ultimately, the case will turn on the Commissioner's evaluation of the medical evidence. The ALJ purported to accept the opinion of one of Petitioner's treating physicians. The ALJ's decision, however, did not accurately reflect the medical opinion it purported to accept. The Court is not in a position at this point to rule on the question of whether the ALJ was required to accept the opinion of Dr. Swartz. Such a determination is ultimately fact-bound and will have to be conducted on remand.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1)      Cheryl Marsla's Petition for Review (Dkt. 1) be **GRANTED** and the action be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 17, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge

**REPORT AND RECOMMENDATION - 24**